[Civ. No. 7883. Third Dist. May 8, 1951.]

EDWARD G. VOLLMAN, Appellant, v. CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION, Respondent.

Blewett, Blewett & Macey for Appellant.

Edmund G. Brown, Attorney General, Irving H. Perluss, William L. Shaw and Vincent P. Lafferty, Deputy Attorneys General, for Respondent.

DEIRUP, J. pro tem.—Plaintiff appealed from a judgment for defendant in this action, which was brought to recover contributions toward unemployment insurance which had been paid under protest.

Appellant is the successor in interest of a partnership which

carried on business under the name of Valley Catering Company. For convenience he will be regarded as being the owner of that business during the period of time that is involved in this action.

In a number of labor camps, from December, 1943, through March, 1946, appellant furnished meals to Mexican nationals who had been brought into the United States to do farm work pursuant to an executive agreement that had been entered into by representatives of the governments of the United States and Mexico. For a short time he deducted from the wages of employees 3.70 per cent, assuming that he was required to do so by the Unemployment Insurance Act (Stats. 1935, ch. 352, as amended; 3 Deering's Gen. Laws, Act 8780d). On April 19, 1944, having been advised that he was not subject to the act and that either he should repay the sums he had deducted or elect to come within its provisions, he filed with the respondent a written election, as provided in section 15 of the act. The effect of the election was to subject the plaintiff to the terms of the act to the same extent as all other employers who were covered by the act for two calendar years and thereafter unless he gave proper notice of withdrawal of his election. Such a notice was never given.

Appellant found it convenient to employ Mexican nationals to wash the dishes, clean the mess halls, prepare vegetables, keep the stock rooms in order and to do whatever other work was necessary in the maintenance and operation of the kitchens. He did not pay their wages directly to them, but to the camp manager. He did not make any deductions from their wages for unemployment benefits, but he paid to the defendant, under protest, all the sums he was required by the act to pay, amounting to $3,731.21.

Appellant contends that the Mexican nationals whom he employed did not come within the purview of the act, for they were brought into the United States pursuant to an executive agreement which required that they be returned to Mexico within too short a period of time to permit them to qualify for unemployment benefits under the act. ■ One answer to this contention is that under the provisions of section 53 of the act they would have had the same right as any other employee to apply for compensation after they had received $300 in wages. ■ Another answer is that contributions by an employee are payable to the respondent even though the employee might not be eligible for benefits because

of insufficient earnings. (*California Emp. Com.* v. *Los Angeles etc. News Corp.*, 24 Cal.2d 421 [150 P.2d 186].)

Before being brought into the United States each Mexican national executed an "Individual Work Agreement" with the government of the United States acting by and through the Department of Agriculture by which the rights and obligations of the worker were set out at length. It was agreed that the worker would be employed exclusively in agricultural work; that he would be paid the prevailing rate of wages in the locality in which he worked; that in the event of unemployment he would receive a subsistence allowance; and that:

"No deductions will be made from the wages of the Worker for commissions, fees or any other purpose (except as required by law) which will have the effect of reducing his wages below that provided for . . ."

It is contended that by the executive agreement and the contract the worker was provided with unemployment insurance which would prevent him from receiving benefits under the Unemployment Insurance Act; and further, that deductions from his wages were forbidden.

It will be noted, however, that the Mexican nationals who were employed by appellant were not employed in agricultural work, and the provisions that we have cited are for the benefit of agricultural workers. Also, the provision for subsistence is not in the nature of unemployment insurance. The deductions that the appellant was permitted to make from the wages paid and was required to pay to the respondent were deductions that were required by law.

The contention that the Mexican nationals were employed by a state agency and were therefore exempt from the provisions of the act is without merit. It is true that they were brought to the place of employment by a state agency, but they were employed by. the appellant.

Appellant refers to Assembly Bill No. 2206 which was passed by the Legislature in 1945. If it had not been pocket-vetoed by the governor it would have exempted the nationals of other countries, working here under executive agreement, from the terms of the act. In *Irvine Co.* v. *California Emp. Com.*, 27 Cal.2d 570, 578 [165 P.2d 908], it is said that bills which were passed by the Legislature in 1943 and 1945 for the purpose of including certain special services within the defini-

tion of agricultural labor, but were pocket-vetoed, were of some significance as evidencing the continuity of legislative intent regarding the use of the broad term "agricultural labor." In that case the Supreme Court held that such special services were in fact included within the term and fortified its conclusion by the reference to the bills as indicating legislative intent. ■ In the present case our conclusion is that there is no ambiguity or uncertainty in the act; that the Mexican nationals were clearly employees within the meaning of the act. For this reason the statement in the Irvine case is inapplicable.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.